**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| Arnoldo Zazueta-Miranda,<br>Movant/Defendant<br>-vs-<br>United States of America,<br>Respondent/Plaintiff. | CV-14-0784-PHX-NVW (JFM)<br>CR-09-1509-PHX-NVW<br><br>**Report & Recommendation<br>on Motion to Vacate, Set Aside<br>or Correct Sentence** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed through counsel a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on April 14, 2014 (Doc. 1). On September 5, 2014 Respondent filed its Response (Doc. 8). Movant has not filed a Reply.

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In its un-traversed Response, Respondent summarizes the factual background as follows:

> Through surveillance and federal wiretaps, Drug Enforcement Administration (DEA) agents determined that Defendant, also known as "Lolo" was a leader of a drug trafficking organization (DTO) which was supplying other DTOs with various controlled substances. The Zazueta-Miranda DTO obtained controlled substances including methamphetamine and cocaine from

1

Mexico, store[d] the drugs in stash houses in Phoenix, Arizona, and then distribute[d] the drugs to other DTOs in the United States. The Zazueta-Miranda DTO also employed money couriers to transport drug proceeds. In early May 2009, intercepted calls led agents to believe that a money transaction involving narcotics proceeds was going to occur.  Agents conducted surveillance of a Zazueta-Miranda DTO stash house, observed co-defendant Rolina Jaramillo leave driving a DTO vehicle, and conducted a traffic stop. A search of the vehicle revealed almost $378,000.00 in U.S. currency hidden in the vehicle. Once released by officers, Jaramillo called Defendant to advise him of the seizure.

Through the investigation, agents determined that in approximately September of 2009, co-defendant Misael Beltran-Cital took over the leadership responsibilities of the DTO while Defendant was in Mexico. In November of 2009, through surveillance and wire interceptions, agents determined that Defendant had returned from Mexico and was arranging drug transactions with co-defendant Marcela Benitez-Salcido. Agents conducted surveillance during one drug deal between Defendant and Marcela, including following Defendant to Marcela's stash house, where he was seen parking in the garage. Agents observed Defendant leave, and later that afternoon, the vehicle believed to be used by Marcela's drug customer, co-defendant Barrington Bowford, was seen leaving the stash house.   Officers stopped Bowford, and seized 10.98 kilograms of cocaine from him.

On many occasions, wiretap interceptions revealed Defendant relaying instructions to individuals involved in his DTO, such as co-defendant Jose Simental-Moreno, in addition to conversations in which Defendant organized or arranged narcotics transactions. Through various traffic stops and search warrant executions, agents seized a total of 73.31 kilograms of cocaine, 6.92 kilograms of actual methamphetamine, 1 kilogram of heroin, and 0.05 kilograms of crack cocaine, as well as U.S. currency, drug ledgers, and digital scales. Furthermore, a search of one of the stash houses from which Defendant had just emerged, resulted in the seizure of two handguns, both determined to be in Defendant's possession, in addition to the kilograms of cocaine, methamphetamine, crack cocaine, drug ledgers, and cash mentioned above.

(Response, Doc. 8 at 4-5.)  *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")


**B. PROCEEDINGS AT TRIAL**

In an Indictment (CR Doc. 3) issued December 8, 2009, the Grand Jury for the District of Arizona indicted Movant and seven others in a six count indictment charing

various drug trafficking related offenses. (Documents filed in the underlying criminal case, CR-09-1509-PHX-NVW, are referenced herein as "CR Doc. ___.")   In particular, Movant was charged with:

1. Count 1, conspiracy to Conspiracy to Possess with Intent to Distribute Controlled Substances;

2. Count 2, Conspiracy to Import a Controlled Substance;

3. Count 3, Conspiracy to Commit Money Laundering;

4. Count 4 and 6, Possession with Intent to Distribute Cocaine;

Movant retained attorney Saji Vettiyil (CR Doc. 15, Notice of Appearance), but three months later substituted attorney Herman Alcantar Jr. (CR Doc. 72, Order 3/19/10; Exhibit A, Alcantar Affidavit at 1.)

In a letter dated April 16, 2010, the Government tendered a plea offer to Movant. Any opportunity to improve upon the offer was conditioned upon Movant's cooperation with the government.  In particular, the Government sought information from Movant to support his contentions that Movant's brother, Israel Zazueta-Miranda, and co-defendant Simental-Moreno, were the true leaders of the drug trafficking organization.  However, Movant refused to provide any information against his brother.  The plea offer was not accepted.  (Exhibit A, Alcantar Affidavit at 2.)

In a letter dated August 24, 2010, the Government extended the same offer to allow Movant to plead guilty to Count 1 with various sentencing stipulations including his role as a leader and possession of a firearm, with a sentencing range of 262 to 405 months.  (Exhibit A, Alcantar Affidavit at 3 and Exhibit A thereto.)  Counsel reviewed the plea agreement and evidence with Movant, and advised Movant of the likely sentencing range.  Movant refused to agree to the sentencing stipulations.  (Exhibit A, Alcantar Affidavit at 4.)   Counsel also advised Movant that his expected sentence at trial, even if convicted on all charges, was 180 to 240 months, less than the lowest possible under the plea agreement offered by the Government. (*Id.* at 5-6.)

The court set a change of plea hearing for Movant on October 12, 2010, but

Movant advised the Court that he had learned additional information and would not be entering a plea. Movant was advised by the Government that the plea offer extended to him had expired. (CR Doc. 151, M.E. 10/12/10.)

On October 20, 2010, a Superseding Indictment (CR Doc. 157) was issued naming Movant and four of the other original indictees, plus two new indictees. Movant was charged with the original offenses, plus new charges for possession with intent to distribute (Count 7) and a weapons charge (Count 8). In total, Movant was charged with:

1.  Count 1, Conspiracy to Possess with Intent to Distribute Controlled Substances;

2.  Count 2, Conspiracy to Import a Controlled Substance;

3.  Count 3, Conspiracy to Commit Money Laundering;

4.  Count 4 and 6, Possession with Intent to Distribute Cocaine;

5.  Count 7, Possession with Intent to Distribute a Controlled Substance; and

6.  Count 8, Possession of a Firearm in Furtherance of a Drug Trafficking Offense.

On December 7, 2010, Movant and one other defendant, Mario Benitez, proceeded to trial. On the first day of trial, the Government dismissed Count 4 of the Superseding Indictment. (CR Doc. 202, M.E. 12/7/10.) After a six day jury trial, Movant was found guilty of the remaining charges against him. (CR Doc. 219, M.E. 12/16/10; CR Doc. 228, Special Jury Verdict.)

On August 25, 2011, the Court sentenced Movant to a total of a 240-month term of imprisonment followed by 5 years on supervised release. (CR Doc. 293, M.E. 8/25/11; CR Doc. 295, Judgment.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Movant filed a direct appeal. (CR Doc. 296, Notice of Appeal.) Movant argued: (1) there was insufficient evidence to support the firearm charge; and (2) the sentence

was unreasonable.  The Ninth Circuit rejected those arguments and affirmed.  (CR Doc. 342, Mem. Dec.)

Movant filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on April 15, 2013. (Exhibit D)

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Motion** - Petitioner commenced the current case by filing through counsel the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on April 14, 2014 (Doc. 1).  Movant's Motion asserts the following two grounds for relief:  "(1) his trial counsel erroneously informed him that his sentencing would be the same if he pleaded guilty or went to trial and (2) his trial counsel failed to prepare and effectively present testimony or evidence at the end of the government's case to rebut the mistaken identity of the leader of the drug organization."  (Order 5/21/14, Doc. 5 at 2.)  Movant requests an evidentiary hearing to support his contentions.

**Response** – On September 5, 2014, Respondents filed their Response ("Answer") (Doc. 8).  Respondents argue that the claims are without merit.

**Reply** – In its Service Order, the Court provided: "Movant may file a reply within 30 days from the date of service of the answer to the § 2255 Motion."  (Order 5/21/14, Doc. 5 at 2.)  That time has long passed and Movant has not filed a reply.

## III. APPLICATION OF LAW TO FACTS

## A.  GROUND 1 – INEFFECTIVENESS RE SENTENCING ADVICE

In his Ground 1, Movant contends that upon receipt of the Government's letter of August 24, 2010, counsel Alcantar failed to provide the letter to Movant or advise him of its contents, and informed Movant that his sentence would be the same if he plead guilty pursuant to a plea agreement as it would be if he lost at trial.  Movant contends that counsel failed to inform him of the potential for a three level downward adjustment for acceptance of responsibility, or of the mandatory 60 month consecutive term on the

weapons charge.  Movant contends that as a result of the rejection of the plea offer, the government filed its Superseding Indictment.  (Motion, Doc. 1 at 6.)  Thus, Movant concludes that as a result of counsel's deficient advice, he proceeded to trial and risked exposure to a life sentence and lost the opportunity for a sentencing adjustment for acceptance of responsibility.  (*Id.* at 8.)

In response, the Government argues that the advice by counsel was correct, both as to: (1) the advice that Movant's exposure at trial for a conviction under 21 U.S.C. § 846 being 120 months to life regardless whether he pled guilty or went  to trial; and (2) the prediction that his sentencing range at trial was 180 to 240 months.  Respondent further argues that counsel advised Movant as to the potential for a reduction for acceptance of responsibility, the potential for the addition of the weapons charge, and reviewed the plea offer with him. Respondent argues that the actual sentence at trial was better than the best likely under the proffered plea agreement. (Response, Doc. 8 at 6-10.)

**Applicable Standard** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, a defendant must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.  Although the defendant must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

The court hearing an ineffective assistance of counsel claim must consider the totality of the evidence with an eye toward the ultimate issue of whether counsel's conduct so undermined the functioning of the adversarial process that the proceeding lacked fundamental fairness.  *Id.* at 686; *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)(observing that counsel cannot be labeled ineffective for failing to raise issues which have no merit); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) (failing to

raise meritless argument on appeal does not constitute ineffective assistance of counsel).

In the context of allegations that counsel was ineffective in advising on a plea offer, which is ultimately rejected, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012)

The focus regarding prejudice in such circumstances remains on the effect of the asserted deficiency on the ultimate outcome.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel….To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012).

**Deficient Performance** –   Movant points to four failures as deficient performance: (1) failure to communicate offer; (2) improper advice on consequences under plea or at trial; (3) failure to communicate potential for downward adjustment for acceptance of responsibility; and (4) failure to communicate mandatory sentence on weapons charge.

Communication of Offer – Movant alleges counsel failed to deliver the August 24, 2010 offer or to communicate it to Plaintiff. Movant proffers nothing to support this contention other than his current counsel's avowals as to the bare allegations of the Motion.

Respondent provides the affidavit of attorney Alcantar avowing that he communicated the plea offer to Movant "on September 15, 2010, October 1, 2010,

October 8, 2010, and finally October 11, 2011 at Central Arizona Detention Center."
(Exhibit A, Alcantar Affid. at 2-3.)

> On each occasion I spent at least 1 hour reviewing in Spanish the terms of the entire plea agreement. I am a fluent Spanish speaker and was able to converse directly with Mr. Zazueta-Miranda in his native Spanish language. I further did not perceive any issues with his comprehension of my language or the subject matter we discussed. I read the entire plea agreement in Spanish to the defendant and discussed its contents with him.

(*Id.* at 3.)   Trial counsel further details the specific contents of those discussions, and Movant's reactions, including Movant's objection to the provisos for stipulations to his leadership role and the firearm. (*Id.* at 3-4.)

Movant makes no effort to counter those avowals.

Movant does request an evidentiary hearing to support his claims. However, the Ninth Circuit has recognized that even when credibility is at issue, no evidentiary hearing is required if it can be " 'conclusively decided on the basis of documentary testimony and evidence in the record.' " *Shah v. U.S.*, 878 F.2d, 1156, 1159 (9th Cir. 1989) (quoting *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir.1989)).   The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir.1998).

The circumstances of the case demonstrate that Movant was aware of the offer and its terms.   Indeed, Movant's own allegations indicate that the plea offer was communicated to him.   Movant alleges that "[t]rial counsel informed Mr. Zazueta-Miranda and family, that it would be the same sentence outcome of 120 months to life in prison if he plead guilty pursuant to the plea agreement or lost at trial" (Motion, Doc. 1 at 6.)

Further, Movant appeared at the change of plea proceeding on October 12, 2010, heard the prosecutor advise the Court that the plea offer was expired, and voiced no surprise or objection.  (Exhibit E, R.T. 10/12/10.)

The undersigned finds nothing in the record to show that the written offer itself

was delivered to Movant. But, Movant "does not speak, read, or understand English." (Motion, Doc. 1 at 8.). Thus, it is not surprising that counsel would not tender to Movant the actual letter, which was written in English. But Movant proffers nothing to show that delivery of the letter itself was necessary to communicate the offer, or to permit Movant to make an informed decision whether to accept or reject the offer.

To the extent that Movant contends portions of trial counsel's explanation of the terms and their impact on him were in error, those matters are addressed hereinafter. It is clear, however, that the plea offer and its terms were communicated to Movant.

<u>Advice on Comparative Sentencing</u> – Movant argues that "[t]rial counsel informed Mr. Zazueta-Miranda and family, that it would be the same sentence outcome of 120 months to life in prison if he plead guilty pursuant to the plea agreement or lost at trial." (Motion, Doc. 1 at 6.)

Here, the 120 months to life recalled by Movant reflects trial counsel's avowal that he advised Movant "the statutory minimum sentence on his most serious charge was 10 years to life." (Exhibit A, Alcantar Affid. at 3.) Trial counsel further avows that it was his habit to review those facts with defendants, and that he further advised Movant on the advisory nature of the Federal Sentencing Guidelines. (*Id.*)

In that context, trial counsel did, effectively, communicate that Movant's exposure under the plea or at trial was "120 months to life in prison." Under the applicable law, that was a true proposition.

To the extent that Movant intends to assert that trial counsel asserted not that 120 to life was his exposure, but the likely outcome, the record refutes such a claim. Trial counsel avows that he predicted to Movant that he faced "a sentence of between 180 and 240 months" if he proceeded to trial. (Exhibit A, Alcantar Affid. at 5-6.) In contrast, counsel avows that he estimated Movant's exposure under the plea agreement to be 262 to 405 months. (*Id.* at 4.) Thus, according to counsel, the advice given was that the plea offer was not the same as trial, but that it was worse than proceeding to trial. And, in fact, the sentencing range proposed in the August 24, 2010 plea offer was a small subset

of the 120 months to life recalled by Movant.   Thus, an assertion that Movant was left to believe that his likely sentence either under the plea and/or at trial was 120 months to life, would be palpably incredible.

Acceptance of Responsibility Adjustment – Movant alleges that "[t]rial counsel did not inform Mr. Zazueta-Miranda of the government's three-level adjustment for Acceptance of Responsibility had he taken the plea agreement." (Motion, Doc. 1 at 6.)

The undersigned does not understand Movant to assert that he was told of the adjustment but it was not adequately explained.   Rather, Movant asserts he was not informed that such an adjustment was possible.

Trial counsel avows: "I advised Mr. Zazueta-Miranda that although he would receive the three-level adjustment for Acceptance of Responsibility, he would receive a 2-4 level enhancement as a leader/organizer and 2 levels for use of a firearm in furtherance of the drug conspiracy." (Exhibit A, Alcantar Affid. at 3.)   Counsel further avows:

> I advised Mr. Zazueta-Miranda, as I do all defendants who reject a plea offer and proceed to trial, a court cannot punish a defendant for exercising his constitutional right to a jury trial. I advised Mr. Zazueta-Miranda that although by proceeding to trial he would lose the benefit of a recommended 3-level reduction for Acceptance of Responsibility, this could possibly be offset by Mr. Zazueta-Miranda, through counsel, advising the Court well before trial, he was willing to plead guilty to all counts without a plea agreement. As stated earlier, this I did at the change of plea proceedings before Magistrate Judge Burns and in my objections to the PSR.

(*Id.* at 6.)

Counsel did raise the argument in his briefings on sentencing, but that was long after the plea had been rejected.   Moreover, portions of that argument are not reflected on the trial court record.  Movant argued:

> The only reason the defendant proceeded to trial was the defendant could not reach an agreement with the Government regarding his role in the DTO and use of a firearm. In fact, on October 6, 2010 when this case was set for a change of plea before Magistrate Burns, the defendant was prepared, and placed on the record, he would admit to all charges without the benefit of a plea. The defendant was prepared to do so since the existing indictment did not contain the count alleging the use of a firearm.

(CR Doc. Objection to PSR at 5.)  The change of plea hearing was actually held on October 12, 2010.  (CR Doc. 151, M.E. 10/12/10.)  No hearing was held on October 6, 2010, and the only docket entry on that date is a minute order resetting the change of plea to October 12.  (CR Doc. 148, M.Order 10/6/10.)

Further, trial counsel did not advise Magistrate Judge Burns on the record that Movant was willing to plead guilty to all counts on the record. Rather, he simply indicated that "I cannot proceed in terms of the factual basis for the current plea." (Exhibit E, R.T. 10/120/10 at 3.)    Still, at sentencing the prosecutor affirmed the allegation that Movant was at the time of the change of plea considering a plea to the charges.

> At that date, based on the contemporaneous notes I took during that hearing, it's my recollection that the defendant advised that he was considering pleading straight up to all of the charges but that he could not enter the plea agreement but has not reviewed pleading to each count with the defendant yet.

(CR Doc. 325, R.T. 8/25/11 at 11.)

Moreover, a recommendation for a three level downward departure for acceptance of responsibility was essentially the only practical advantage under the plea offer. (Although the offer resulted in the dismissal of lesser charges, the likely and eventual outcome was that the sentencing on those charges was concurrent to the sentencing on Count One.)   The record is uncontroverted that counsel Alcantar met with Movant repeatedly to review the plea offer, and that Movant had been previously presented with not only the August plea offer, but with the April plea offer on the same terms.  (Exhibit A, Alcantar Affid. at 1-2.)  It is all but inconceivable that counsel would have gone to such lengths to evaluate a plea offer with Movant without discussing its primary advantage.

Moreover, the plea offer explicitly stated: "As part of the plea, the government will recommend a three-level adjustment for Acceptance of Responsibility."  (Exhibit A, Attachment A, Letter 8/24/10 at 1.)  The undersigned has found hereinabove that the terms of the plea were communicated to Movant.

Based on the foregoing, the undersigned finds that Movant's allegation that he was not informed of the adjustment is palpably incredible.

<u>Mandatory Sentencing</u> - Finally, Movant argues that counsel failed to inform him of the mandatory 60 month consecutive term on the weapons charge. (Motion, Doc. 1 at 6.) The undersigned does not understand Movant to assert that he was unaware of the potential for the weapons charge to be filed, but that he was unaware that the sentence was a mandatory 60 months sentence.

Indeed, the Government's offer of August 24, 2010 explicitly warned that if the offer were rejected, the government would not only allege additional drugs quantities, but "would also likely seek an 18 U.S.C. § 924(c) charge for the firearms seized on December 8, 2009." (Exhibit A, Attachment A, Letter 8/24/10 at 1-2.) Moreover, the letter forewarned: "Please note that the government will not dismiss any firearms counts as a part of any later plea negotiations, which would likely expose your client to a mandatory, consecutive term of imprisonment in addition to any sentence on narcotics charges." (*Id.* at 2.) As discussed hereinabove, the undersigned has concluded that the contents of this plea offer were communicated to Movant. Thus, Movant was on this basis alone made aware of the potential for not only the charge but a consecutive mandatory prison sentence.

Moreover, counsel avows: "I further advised him of the federal offense of 18 U.S.C. § 924(c); Possession of a Firearm in Furtherance of a Drug Trafficking Crime. We discussed the elements of the offense, the government's discovery substantiating his violation of this offense, and the potential penalties, including that those penalties would be consecutive to any sentence he received for the violation of 18 U.S.C. § 924(c) [sic]." (Exhibit A, Alcantar Affid. at 3.)

While counsel does not detail what he advised Movant was the applicable penalty for the violation of 18 U.S.C. § 924(c), the sentencing under that section is straightforward, beginning with a minimum of a mandatory five  years, and proceeding upward to life. *See*  18 U.S.C. §§ 924(c)(1)(A)(i) (simple use or carrying of firearm, 5

years), 924(c)(1)(C)(ii) (second offense with machine gun, etc., life) and 924(c)(1)(D) (always consecutive). Even the most ham-handed review of the penalties under this offense would have communicated a minimum of a consecutive 60 month sentence.

Based on the foregoing, the undersigned finds palpably incredible Movant's allegation that he was not informed of the mandatory, consecutive, minimum sentence of 60 months on the weapons charge.

Summary – Based on the foregoing, the undersigned finds palpably incredible Movant's allegations that counsel performed deficiently in communicating with Movant concerning the plea offer and its benefits.

**Prejudice** – Even if the undersigned could find counsel's performance deficient with regard to the plea offer, the undersigned finds no prejudice to Movant as a result.

Here, Movant fails to suggest how his condition was worsened by whatever defects he perceives in counsel's advice. His sentence at trial was 240 months. The lowest possible guidelines sentence under the offer of August 24, 2010 was 262 months. Movant proffers no reason to believe that his sentence by pleading would have been less than 262 months.

Movant argues that had he pled guilty he would have obtained a downward departure for acceptance of responsibility and would have not faced the mandatory 60 month consecutive sentence on the weapons charge. (Motion, Doc. 1 at 8.) However, this argument presumes that the Court would have been inclined to extend the same leniency on the limited charges under the plea agreement as was ultimately extended at trial. Here, the government argued, in accordance with the Sentencing Guidelines for a life sentence. The Court, however, considered that next-to-most-extreme punishment inappropriate in this case as a matter of proportionality among co-defendants and with other offenses. Thus, the Court departed from the guidelines and imposed a reduced sentence of 240 months. (CR Doc. 325, R.T. 8/25/11 at 26-28.) The Court reasoned:

> It is a very substantial and significant sentence, but it is short of this defendant's estimated life span, so that it gives him some hope of release, gives him some reason to try to deal with prison as best he

can, and maybe allow him to grow in such a way so that at the conclusion of that very lengthy sentence, his life will be different.

(*Id.* at 27-28.)  Moreover, the Court made clear that this sentence was not founded upon some discrete calculations of offenses, but upon the Court's perception of the appropriate penalty for Movant's course of conduct.  The Court stated:

> For the record, the sentence imposed is 20 years, which under federal regimes is 240 months. And in order to achieve that net result, we are imposing the following sentences. If for any reason any subset of this sentence is set aside or vacated on further review or otherwise, then we would like an opportunity to resentence the defendant in order to achieve the ultimate goal of a 20-year sentence. In the alternative, any reviewing Court could do that on its own.

(*Id.* at 28.)  But, the plea offer did not preclude the Court from considering all the relevant conduct in sentencing to the limited charge.  Moreover, it explicitly required the Court to make findings on the only two issues which Movant opposed and on which he had a real chance at trial:  the leadership role and the weapon.

Movant concludes that as a result of counsel's deficient advice, he proceeded to trial and risked exposure to a life sentence.  (Motion, Doc. 1 at 6.)  The undersigned is unaware of any definition of prejudice which would extend to potential but unrealized risks at trial.  Indeed, the focus of the prejudice inquiry is to compare what actually happened with what could have happened had counsel's advice been better.  Here, "better" is purportedly something resulting in a plea.  "Actually" is not a life sentence, that could have happened but didn't, but a sentence of 240 months.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691.  Moreover, even under the plea agreement, Petitioner risked a life sentence. 10 years to life is the authorized sentence for violations of 21 U.S.C. §§ 841(b)(1)(A)(ii) and (viii), as alleged in Count 1, to which Movant was to plea.  Nothing in the plea offer prevented the Court from sentencing Movant to the maximum statutory penalty.  The plea offer did "anticpate[]" a sentencing range of 262 to 405 months, but did not restrict the Court to that range."  (Exhibit A, Attachment A, Letter 8/24/10 at 1.)

14

Movant points to the addition of the weapons charge as a result of the rejection of the plea agreement. It is true that "the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from *either a conviction on more serious counts or the imposition of a more severe sentence.*" *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (emphasis added). However, nothing in the plea offer explicitly precluded the government from subsequently bringing the weapons charge, even had a plea been entered pursuant to the offer. At best, the offer intimated to such a preclusion by asserting that "the government will not dismiss any firearms counts as a part of any *later* plea negotiations." (Exhibit A, Attachment A, Letter 8/24/10 at 2 (emphasis added).) Thus, perhaps the government would have been open to negotiation on this point in the drafting of a plea agreement.

All of this presupposes, however, that Movant would have (had he had all the advice he contends he did not receive) actually accepted the offer. It is not enough to show that the outcome at trial was worse. Rather, Movant must "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 132 S.Ct. at 1409. The Court must assess the circumstances surrounding the case to determine if the Movant's allegation that he would have proceeded in the alternative direction is plausible. *See e.g. United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence).

Here, the record establishes that it is more likely that Movant would not have accepted the plea offer in any event. Movant had previously rejected the same offer when it was presented in April, 2010. His persistent position was that he was not a leader of the organization, and eventually attempted to shift that role to his brother and others, and that he did not effectively possess the weapons found in the stash houses. Albeit in this limited fashion, Movant consistently insisted on his innocence. Moreover, as discussed hereinabove, the offer provided Movant with minimal real benefit. The

15

1   foregone charges were likely to be, and ultimately were, the subject of concurrent

2   sentences.   The uncharged weapons offense did involve a consecutive and mandatory

3   sentence.   However, counsel had correctly advised Movant that his likely sentencing

4   range at trial, even with the additional charge, was no worse than what was part of the

5   plea offer, and still Movant did not accept the offer.

6          Based on the foregoing, the undersigned finds no prejudice.

7          **Summary** – Movant has failed to allege plausible facts to show that counsel

8   performed deficiently with regard to the plea offer, and similarly has failed to show

9   prejudice from any such deficiencies.   Accordingly, Ground 1 is without merit and

10  should be denied.

11

12  **B.  GROUND TWO – INEFFECTIVE ASSISTANCE RE LEADERSHIP ROLE**

13         In his Ground Two, Movant argues that trial counsel was ineffective because of

14  his failure to adequately show that Movant was not the leader of the drug organization.

15  In particular, Movant argues that counsel requested photographs of Movant's brother and

16  told Movant's wife she would be called to testify at trial that the voice in the

17  government's recordings were not Movant, but his brother.   Counsel failed to present the

18  photos or to call Movant's wife to testify.   (Motion, Doc. 1 at 6-7.)

19         Respondent argues that counsel adequately pursued the line of defense by

20  pursuing a voice analysis, and had a reasonable tactical basis to decline to call Movant's

21  wife because she would place Movant in the United States at the relevant times, and thus

22  would be more harmful than helpful to the case.   Further, the government had obtained

23  its own voice analysis determining the voice on the calls to be Movant's. Respondent

24  further argues that counsel vigorously cross-examined the prosecution's witnesses.

25  (Response, Doc. 8 at 10-12.)

26         Trial counsel avows that mistaken identity was the only viable complete defense

27  at trial, and that Movant's wife was a viable witness on this issue.   However, counsel

28  avows that "the danger in having her testify is she would have to admit the defendant

16

stayed in the United States through the fall of 2009…the time frame of the most damaging evidence assembled against the defendant." (Exhibit A, Alcantar Affid. at 5.) Moreover, counsel avows that the Government had obtained a voice analysis using exemplars of phone calls between Movant and his wife, and the she would have had to confirm his identity on those calls. Counsel further avows that he decided to not call Movant's wife after a co-defendant failed to identify Movant "as involved in the DTO and evidence linking [Movant] to the firearms, appeared weak." (*Id.*) Further, counsel saw a tactical advantage to having "the Court and jury see at least [Movant's] wife was present to support him." (*Id.*) Counsel further avows that Movant agreed with the determination. (*Id.*)

**Deficient Performance** – Movant suggests two different bases for deficient performance: (1) the failure to pursue a mistaken identity defense at trial to challenge his leadership role; and (2) failure to call Movant's wife at trial.

Mistaken Identity Defense – Movant argues that counsel announced an intent to raise a defense of mistaken identity at trial as to the leader of the DTO, but failed to adequately prepare or present the defense at trial.

A failure to investigate a meritorious defense may constitute ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). However, a defendant may not leave a court to speculate what evidence the deficient investigation would have discovered. In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the defendant must show specifically what that investigation would have produced. For example, a defendant ordinarily may not simply speculate about what a witness' testimony might have been, but must adduce evidence to show what it would have been. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *U.S. v. Ashimi*,

1   932 F.2d 643, 650 (7th Cir. 1991).

2       Here, Movant identifies only two pieces of evidence to support the claim, a

3   photograph of his brother and the testimony of his wife.   The latter is addressed

4   hereinafter.

5       Trial counsel makes the following avowals identifying the evidence to support a

6   mistaken identity defense:

> According to Mr. Zazueta-Miranda, Israel Zazueta-Miranda
> and co-defendant Roberto Simental-Moreno were the
> leader/organizers of the DTO; not the defendant. Israel and Roberto
> knew each other and each other's family in Mexico. Mr. Zazueta-
> Miranda worked with his brother's DTO occasionally in 2009 under
> Simental-Moreno when the defendant was in Phoenix and his
> brother Israel, was in Mexico. According to Mr. Zazueta-Miranda,
> when he worked with the DTO, he never used or possessed any
> weapons nor did he know of anyone in the DTO using or possessing
> any weapons in connection with the DTO.
> The defendant only worked with the DTO to help his brother
> and earn extra money. Mr. Zazueta-Miranda stated many of the
> intercepted phone calls; particularly calls in March and April 2009
> were made by his brother, not the defendant. According to the
> defendant's wife, Brissa, the defendant and his brother look and
> sound similar. Brissa also provided me with a photo of the
> defendant's brother, Israel as a possible trial exhibit.
> The defendant had legitimate employment as a mason in
> Mexico and would travel into the United States to buy construction
> materials. Sometimes the defendant came into the United States
> with his wife, Brissa and their three children. Brissa provided me
> with receipts for construction material and travel documents into the
> United States.

19   (Exhibit A, Alcantar Affid. at 2.)

20       Counsel avows that he reviewed all of the Government's discovery and evidence,

21   determined that the evidence confirmed Movant's presence at the stash houses, travelled

22   to San Luis Mexico and interviewed Movant's family, including his brother, Israel

23   Zazueta-Miranda, and took steps to retain a voice analysis expert to distance Movant

24   from the intercepted calls.   (*Id.* at 2-6.)   This investigation revealed only two sets of

25   usable evidence:  the photograph of Israel, and the testimony of Movant's wife.  There is

26   no suggestion that Movant's brother would have appeared in the United States District

27   Court to admit to being the leader of the DTO.  And, the voice analysis was rendered

28   superfluous once the Government obtained jailhouse recordings of Movant and his wife.

With regard to the photograph, Movant fails to suggest how this evidence would have been introduced.  Movant did not testify, and for the reasons discussed hereinafter, counsel reasonably concluded that calling Movant's wife was strategically the wrong thing to do.  Moreover, even had Movant's wife been called to provide the photograph of the brother, she would have ultimately had to identify Movant as the person in the videos.

Further, the most damning evidence on the leadership role was not Movant's presence, something he has regularly admitted, but the intercepted phone calls.  A photograph would not have rebutted that information.

Movant's Wife – Movant complains that counsel decided to not call Movant's wife as a witness.  "[T]he skill and judgment one would expect of a reasonably competent attorney" is to decide when to not call a "witness [who] would have done 'more harm than good'."  *Denham v. Deeds*, 954 F.2d 1501 (9th Cir. 1992).  "Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."  *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

Here, the record reflects that counsel made a thorough investigation, and indeed waited through the course of trial, before concluding whether to call Movant's wife.  Movant makes no suggestion that counsel was uninformed before making that decision.  Nor does Movant proffer anything to suggest that counsel's concerns over the harmful effects of calling her were unfounded.

At most Movant complains that counsel changed his mind on whether to call Movant's wife.  One would expect no less of competent counsel.  Trials are not a Rube Goldberg machine, intricately planned out in advance, only to be set in motion and left to run their inevitable course.  They are instead an improvisational dance, with a competent attorney adjusting his moves and counter moves as the trial takes shape.

Movant fails to meet his burden of showing that counsel's conduct was

unreasonable.

**Prejudice** – Even if counsel could be deemed deficient for having not called Movant's wife to testify, Movant fails to show that he was prejudiced as a result.

Respondent recounts the steps taken by Movant on cross examination to attempt to refute the assertion that Respondent was in a leadership role: "For example, trial counsel vigorously cross-examined law enforcement witnesses regarding the possession of the weapons found at a stash house and any counter-surveillance done by suspects; the initial misidentification of 'Lolo' aka Defendant as someone else; the lack of fingerprint evidence obtained by law enforcement agents; and the voice identification of Defendant by the co-case agent." (Response, Doc. 8 at 11-12.)

Given the other evidence against Movant, the undersigned finds no reasonable probability, that had Movant's wife testified and presented a photo of Movant's brother, the outcome would have been different.    Movant's wife proffered no competent testimony on Movant's role, but would have offered only testimony either corroborative of the prosecution's theory, or with regard to her attribution of the phone calls to Movant's brother, rebutted by the voice analysis.

**Summary** – Movant has failed to allege plausible facts to show that counsel performed deficiently with regard to the leadership role evidence, and similarly has failed to show prejudice from any such deficiencies.  Accordingly, Ground 2 is without merit and should be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255. The recommendations if accepted will result in Movant's Motion to Vacate being resolved adversely to Movant. Accordingly, a decision on a certificate of Appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the claims are plainly without merit and jurists of reason would not find it debatable whether the Motion states a valid claim.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion, a certificate of appealability should be denied.


# V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed April 4, 2014 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings

21

and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: February 4, 2015

14-0784r RR 15 01 27 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

22